In the
**UNITED STATES DISTRICT COURT**
for the **SOUTHERN DISTRICT OF INDIANA,**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| *vs.* ) | **CAUSE NO. 1:05-CV-01274-SEB-JMS** |
| ) | |
| **TERRY R. MERCER; SHARON O.** ) | |
| **MERCER; and FARM CREDIT** ) | |
| **SERVICES OF MID-AMERICA, INC.**, ) | |
| ) | |
| Defendants. ) | |

**E N T R Y**
**on Plaintiff's and Defendants' Cross-Motions for Summary Judgment**
**(doc. nos. 35 and 39)**

Plaintiff United States of America, through its Farm Service Agency ("FSA"), gave Defendants a series of farm loans on which they have defaulted. In this Cause, the Government seeks *in personam* judgments for the balances owed and seeks to foreclose on the mortgages and personal-property security interests securing Defendants' promissory notes. Currently before the Court are the parties' cross-motions for summary judgment. The parties do not dispute the material facts and they are sufficiently established by the submitted evidence. Because the two dispositive issues of law are resolved in favor of the Government and against Defendants, the Government's motion is GRANTED and Defendants' motion is DENIED.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

1

matter of law." Fed. R. Civ. P. 56(c). Although all reasonable inferences from the evidence shall be drawn in favor of the non-moving party, the non-moving party cannot rest upon her pleadings but must demonstrate a genuine issue of material fact by presentation of specific evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Defendants have three Farm Loan Program ("FLP") loans outstanding with FSA. Two farm-ownership loans in the amounts of $10,000 and $60,000 were issued in 1974 and 1977, respectively, and an economic-emergency loan in the amount of $118,400 was made in 1984. Each loan was secured by duly-recorded mortgages on real estate and security agreements on personal property. The loans went through a series of re-amortizations and reschedules in 1984, 1986, 1989, and 1996 when Defendants experienced difficulties in meeting their obligations. As of January 25, 2005 (seven months before this suit was filed), the combined principal balance outstanding on the three loans was $159,753.50 and accrued interest was $38,884.26, for a total of $198,637.76. Interest has been accruing at the rate of $24.9382 each day from January 26, 2005.

As part of the 1989 comprehensive reamortization of the loans, FSA agreed to write-down $103,161.47 of Defendants' debt in return for their execution of a shared-appreciation agreement ("SAA") entitling FSA to recapture the write-down amount from appreciation in the market value of the mortgaged real estate after either ten years, payment of the loans in full, transfer of the real estate, or Defendants ceasing to farm.[1] In 1999, when the shared appreciation was due, Defendants executed an agreement with FSA suspending payment for one year. In the

---

[1] By regulation, FLP borrowers are required to agree to SAAs if, as in Defendants' case, they receive write-downs of loans that are secured by real estate. 7 CFR § 1951.909(e)(4)(vi).

agreement, Defendants also acknowledged that they owed shared appreciation in the amount of $99,500 with interest accruing at an annual rate of 6.5%.  This agreement was renewed in 2000 and 2001, the maximum number of renewals allowed.  As of January 25, 2005, Defendants owed $99,500 of shared appreciation plus accrued interest of $34,959.94, for a total of $134,459.94.  Interest has been accruing at the rate of $17.7192 each day from January 26, 2005.

As of November 2, 2006, Defendants owed on the notes and the SAA the principal balance of $263,902.94, accrued unpaid interest of $100,068.64, with interest accruing thereafter at the daily rate of $43.2943, the cost of a title search in the amount of $850, the cost of a lien search in the amount of $20, and real-estate taxes in the amount of $4,717.75.

When Defendants fell behind in their scheduled loan and shared-appreciation payments in 2003, they applied for "primary loan servicing" or debt-restructuring.  On November 6, 2003, FSA denied this request because an analysis of Defendants' debts and available assets indicated that they were at least $17,000 short of being able to develop a feasible plan for restructuring that would allow them to meet their living expenses and debts, including their past-due obligation to pay shared appreciation, at that time totaling $126,096.49.  Defendants had also already received their lifetime limit of one write-down.  FSA warned that the loans would be accelerated, the mortgages foreclosed, and its security interests enforced.  The November 2003 notice informed Defendants that they could avoid foreclosure and enforcement of security interests by paying off their "FSA debt" in the amount of $312,738.92 which was less than the current market value of the property securing the debt, $400,664.

FSA's regulations provide that "[e]ligible borrowers will have 90 days after the receipt of

the notification of ineligibility for Primary Loan Service programs to buy out their loans at Current Market Value, or the balance of their unpaid FLP debt, whichever is lower." 7 CFR §1951.909(h)(4)(i). "Current Market Value" means the current appraised value of the security property. 7 CFR §§ 1951.906 and 1951.909(h)(4). Because FSA calculated the value of Defendants' security property at $400,664, which was greater than the outstanding debt balance of $312,738.92, its November 2003 notice termed its satisfaction proposal a "pay off" instead of a "buy out."

On November 12, 2003, Defendants responded with a proposal to pay off their debt in the amount of $186,642.43, which was the outstanding balance owed less the shared appreciation principal and interest. Treating this proposal as a request for reconsideration (of its denial of primary loan servicing or its calculation of the pay-off amount), FSA denied it on November 24, 2003, reiterating that the total amount of debt owed was $312,738.92. Defendants then began writing letters to FSA apparently contending that the regulations allowed them to satisfy all of their FSA obligations, including the shared-appreciation principal and interest, by paying off only the principal and interest on their three loans. FSA responded on January 8, 2004, stating again that only a buy out or pay off of all FSA debts would prevent foreclosure.

Both FSA's November 3, 2003 letter rejecting Defendants' request for primary loan servicing and its November 24, 2003 letter rejecting their request for reconsideration provided notice to Defendants of their right to appeal the decisions to the Department of Agriculture's National Appeals Division ("NAD"), pursuant to 7 CFR Parts 11 and 780. On February 9, 2004, Defendants wrote to the NAD asking for review of the FSA's decisions. On February 12, 2004, the NAD rejected Defendants' appeal as untimely. By letter dated April 24, 2004, FSA

4

accelerated Defendants' loans and the shared-appreciation amount owed and, on August 25, 2005, filed this foreclosure action.

Resolution of the pending summary-judgment motions turns on two issues of law: first, whether the regulations allow Defendants to satisfy their shared-appreciation debt in full simply by paying the outstanding principal and interest on their three loans, and second, whether their failure to exhaust their administrative remedies precludes their claims in this suit. Defendants contend that they owe FSA only the outstanding principal and interest balances on their three FLP loans because 7 CFR § 1951.909(h)(4)(i) requires FSA to accept their November 2003 offer of that amount in full satisfaction of all debts they owed to FSA, including the amounts owed for shared appreciation. In addition to contesting that assertion on the merits, the Government argues that Defendants cannot raise it here because they failed to appeal FSA's decisions to the NAD.

Defendants argue that, because their shared-appreciation agreement is not an "FLP debt" under 7 CFR § 1951.909(h)(4)(i), they were entitled to pay off their FSA obligations in full, including the SAA, by paying only the amount due on the three FLP loans. In effect, they contend that the effect of § 1951.909(h)(4)(i) is to forgive the shared appreciation entirely. Because their argument is not made with great clarity, it is also possible to interpret their argument to be a little less far-reaching: that they are entitled only to have the mortgages and security interests released upon payment of the loan balances, but that the shared appreciation amount is still due; it is only unsecured.

As quoted above, borrowers are entitled to buy out their loans, and prevent foreclosure,

5

by paying either the current appraised value of the property securing their loans or the balance of their unpaid "FLP debt," whichever is lower. 7 CFR §§ 1951.906, 1951.909(h)(4), and 1951.909(h)(4)(i). Pointing to the list of FLP loans in 7 CFR § 1951.906 (definition of "*Farm Loan Program* (*FLP*) *loans*"), which does not include SAAs, Defendants contend that SAAs are not included in the "balance of their unpaid FLP debt" which they must pay in order to satisfy their FSA debts or, at least, to get the FSA's security encumbrances released from their properties. Their argument is unpersuasive. First, courts owe deference to an agency's interpretation of its own regulations as long as that interpretation is reasonable. *Rhodes v. Johnson*, 153 F.3d 785, 789-90, (7th Cir. 1998). In this case, FSA's interpretation that § 1951.909(h)(4), and related regulations, require satisfaction of shared-appreciation obligations before a pay off or buy out will be permitted is not an unreasonable one inasmuch as we come to the same conclusion, as explained following. Second, § 1951.909(h)(4)(i) refers to "FLP debt" not "FLP loans." "FLP debt" is broader in scope and can reasonably be interpreted to include obligations *based on* or *arising out of* FLP loans and an SAA that is executed in return for an FLP loan write-down is certainly based on or arises out of that FLP loan. Third, and most convincingly, the SAA document executed by Defendants lists their outstanding FLP loan notes, states that "This Agreement is attached to the note(s) described . . . ," and recites the property securing the notes, thus incorporating the SAA into the notes as part of their terms and conditions and extending the securities to cover the SAA as well. Complaint, Exhibit D, p. [1]. Furthermore, the attached agreement suspending Defendants' obligation to pay the shared appreciation when it became due provides:

> Borrower agrees to provide any such security instruments or other documents a[s] required by the Agency to maintain the mortgage validity and position held by the Agency on the original Shared Appreciation Agreement for the life of any debt

> instruments tied to the collection of Shared Appreciation debt resulting from the original Shared Appreciation Agreement.

*Id.*, p. [5]. This provision further evidences the parties' understandings that the security instruments executed by Defendants were intended to cover the SAA and the resulting appreciation owed, that FSA could demand execution of additional security for the SAA, and that the SAA was incorporated into the loans.[2] Therefore, the Court concludes that 7 CFR § 1951.909(h)(4)(i) does not entitle Defendants to pay off all of their FSA debt, including shared appreciation, by paying only the principal and interest owed on their three FLP loans.

The government is also correct that Defendants have forfeited their argument on the interpretation of § 1951.909(h)(4)(i) by failing to appeal the FSA's decisions to the NAD. Before a person may bring an action against the Department of Agriculture, FSA, or any officer or employee thereof, he must first exhaust all of his administrative appeals. 7 U.S.C. § 6912(e); *Mahon v. United States Dept. of Agriculture*, 485 F.3d 1247, 1261-62 (11th Cir. 2007); *Cottrell v. United States*, 71 Fed.Cl. 559, 567-68 (Fed.Cl. 2006). On November 6, 2003, FSA denied Defendants' request for primary loan servicing and required them to pay off their outstanding loans and shared appreciation in order to avoid foreclosure. Interpreting Defendants' November 12, 2003 offer to pay only the loan balances as a request for reconsideration (an informal appeal to FSA under 7 CFR § 780.7 (see 7 CFR § 780.6(b)), FSA denied the offer on November 24, 2003. Both of these FSA communications to Defendants contained notice of their right to appeal the decisions to the NAD. Defendants had thirty days in which to do so. 7 CFR § 780.15(c).

---

[2] The incorporation of the SAA into the notes and the provision obligating Defendants to provide additional security also renders untenable Defendants' possible alternative argument: that payment of the loan balances alone, without the shared appreciation due, would compel FSA to release its securities from their properties.

7

Instead, Defendants continued to write letters to FSA debating the amount that they wanted to pay to satisfy all of their FSA obligations.[3]  On February 9, 2004, Defendants finally sent a letter of appeal to the NAD which was dismissed as untimely on February 12, 2004.

Having thus failed to exhaust their administrative appeals, Defendants are barred from challenging the government's decision that they were required to tender the outstanding principal and interest on their loans and the shared appreciation and interest owed in order to pay off their FSA debts and prevent foreclosure.

There being no material issue of fact in dispute and the Government being entitled to judgment as a matter of law, the Government's motion for summary judgment is GRANTED and Defendants' motion for summary judgment is DENIED.  Defendants' request for Equal Access to Justice Act fees is likewise DENIED.  An *in personam* judgment and decree of foreclosure, in form as requested by the Government, will issue.

Date:  09/26/2007

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Debra G. Richards
UNITED STATES ATTORNEY'S OFFICE
debra.richards@usdoj.gov

Lisa Lynn Wojihoski

---

[3] FSA will not reconsider a decision that previously has been reconsidered.  7 CFR § 780.7(c).

lwojoschaler@yahoo.com